UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CORPORACION HABANOS, S.A. and<br>EMPRESA CUBANA DEL TABACO<br>d.b.a. CUBATABACO,<br><br>         Plaintiffs,<br><br>         v.<br><br>SUPERIOR CIGARS USA, INC., and<br>EDGAR GONZALEZ, d.b.a BERNICE'S<br>PREMIUM CIGARS,<br><br>         Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT**<br><br>___ Civ. ___ |

Plaintiffs Corporacion Habanos, S.A. ("Habanos, S.A.") and Empresa Cubana del Tabaco, d.b.a. Cubatabaco ("Cubatabaco") allege for their complaint against Defendants Superior Cigars USA, Inc. ("Superior Cigars"), and Edgar Gonzalez, d.b.a. Bernice's Premium Cigars, as follows:

## NATURE OF THE ACTION

1.      This is an action seeking declaratory and injunctive relief for Defendants' acts of trademark and trade name infringement, false designation of origin as to source and of geographic origin, false advertising, unfair competition, and misappropriation under the laws, including treaty law, of the United States, New Jersey, and at common law, resulting from Defendants' use of the terms "HABANOS" and "HABANOS puros" in connection with Defendants' non-Cuban cigar products. Defendants' conduct has been willful, deliberate, and in bad faith.

1

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) and
15 U.S.C. § 1121(a) for claims arising out of alleged violations of 15 U.S.C. §§ 1114, 1125(a)
and 1126; under 28 U.S.C. §§ 1331 and 1338(a), for claims arising under the General Inter-
American Convention for Trade Mark and Commercial Protection ("IAC"), 46 Stat. 2907; and
under 28 U.S.C. §§ 1338(b) and 1367 for claims arising under state law.  Jurisdiction over all
claims also arises under 28 U.S.C. § 1332(a)(2), (4) as Plaintiff Habanos, S.A., is a citizen of the
Republic of Cuba; Plaintiff Cubatabaco is a "foreign state" as defined in 28 U.S.C. § 1603(a), in
that it is an "agency or instrumentality" of a foreign state within the meaning of 28 U.S.C. §
1603; Defendant Superior Cigars is a citizen of the State of Florida; and Defendant Gonzalez is a
citizen of the State of New Jersey.

3.     This Court has personal jurisdiction over Defendants.

4.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) (2), (c).

## THE PARTIES

5.     Plaintiff Habanos, S.A. is a corporation with legal personality organized under the
laws of Cuba, with its principal place of business in Havana, Cuba.

6.     Plaintiff Cubatabaco is an entity with independent juridical personality and
independent property established by law No. 1191, dated April 25, 1966, of the Republic of
Cuba, with its principal place of business in Havana, Cuba.

7.     Plaintiffs are in the Cuban cigar business.  Plaintiff Habanos, S.A. is engaged,
*inter alia,* in the trade, marketing, and advertising of Cuban cigars throughout the world,
including in Cuba, and the export of Cuban cigars throughout the world (with the exception of
the United States due to the United States trade embargo).  Plaintiffs emphasize that their cigars

are made in Cuba from Cuban tobacco in their promotion, marketing and advertising, including in advertisements in the United States.

8.     Defendant Superior Cigars is a Florida corporation with its principal place of business at 5970 SW 18th Street, Boca Raton, Florida.  Defendant is in the business of distributing, promoting and selling non-Cuban cigars in the United States, including in New Jersey, under the labels, *inter alia*, "HABANOS" and/or "HABANOS puros" for cigars that are not from Cuba and are not made with Cuban tobacco.

9.     Upon information and belief, Defendant Gonzalez is an individual residing in Manchester, New Jersey.  Gonzalez operates within New Jersey, including under the name "Bernice's Premium Cigars," as a wholesaler and/or distributor for Defendant Superior Cigars' "HABANOS" and/or "HABANOS puros" labeled cigars, including to cigar retailers in various locations in New Jersey.

### THE PLAINTIFFS' USES OF "HABANOS" FOR CUBAN CIGARS

10.     Plaintiff Habanos, S.A. owns the federal registration in the United States of the mark HABANOS UNICOS DESDE 1492 & DESIGN, U.S. Reg. No. 2,177,837 (the "HABANOS Mark"), which translates as "unique Havana cigars since 1492," for cigars and related products in International Class 34, which registration was issued by the United States Patent & Trademark Office ("USPTO") on August 4, 1998.  A copy of the certificate of registration for Plaintiff Habanos, S.A.'s HABANOS Mark is annexed hereto as Exhibit A.

11.     The most dominant and significant feature of Plaintiff Habanos, S.A.'s HABANOS Mark, both in its registration and as it appears in advertisements and promotional materials is the word "HABANOS."

12.     Since 1994, Plaintiff Habanos, S.A. has used its HABANOS Mark exclusively for

cigars that are of 100% Cuban origin throughout the world, including in Cuba, and in informational materials, including advertisements, in the United States.  Habanos, S.A.'s HABANOS Mark appears in advertisements and other promotional materials in Spanish, in Spanish and English as "HABANOS  Unique since 1492"; in English as "HAVANAS  Unique since 1492"; and as the stylized "HABANOS" – the dominant feature of the HABANOS Mark.

13.     Since 1994, Habanos, S.A. has used its trade name, "Habanos s.a.," in connection with the sale of its cigars throughout the world, including in Cuba, and regularly advertises its 100% Cuban cigars in international and United States publications using its trade name, "Habanos s.a."

14.     Cubatabaco owns the federal registrations in the United States of the mark LA CASA DEL HABANO & DESIGN, U.S. Reg. No. 1,970,911, translated as "the house of the Cuban cigar," for cigars and related products in International Class 34, and LA CASA DEL HABANO & DESIGN, U.S. Registration No. 2,212,119, as a service mark in International Classes 35 and 42 in connection with stores selling cigars and related products, and restaurant, club and bar services.  U.S. Reg. No. 1,970,911 issued on April 30, 1996, and U.S. Registration No. 2,212,119 issued on December 22, 1998.  Copies of the certificates of registration for Plaintiff Cubatabaco's LA CASA DEL HABANO Marks are annexed hereto as Exhibit B.

15.     Plaintiff  Cubatabaco's  LA  CASA  DEL  HABANO  Marks  appear  in advertisements in the United States in connection with cigars that are of 100% Cuban origin.

16.     The term "Habanos" is the appellation of origin (also known as an indication of geographical origin) for cigars originating in the entire national territory of the Republic of Cuba, and was registered by Plaintiff Cubatabaco in 1967 pursuant to the 1958 Lisbon Agreement for the Protection of Appellations of Origin and their International Registration, as revised and

4

amended. The term "Habana" is the appellation of origin for leaf or manufactured tobacco, as well as products made with such tobacco from the Province of Havana, and was registered by Cubatabaco in 1967 under the 1958 Lisbon Agreement. Copies of these registrations are annexed hereto as Exhibit C. Under authority of Plaintiff Cubatabaco, Plaintiff Habanos, S.A. uses the "Habanos" geographical indication on all packages of its Cuban origin cigars.

17.     As soon as United States law permits, Plaintiffs intend to use the above-mentioned registered marks, the "Habanos s.a." trade name and the "Habanos" geographical indication in connection with the distribution and sale of 100% Cuban origin cigars in the United States, including through retail outlets that sell only Cuban origin cigars under the LA CASA DEL HABANO Mark.

18.     For many years prior to 2002, and continuing today, Plaintiffs have used and promoted the term "Habanos" as an indication of geographical origin for Cuban cigars, including in advertisements in the United States, and have incorporated the word "Habanos" as an indication of geographical origin into the trade dress of all packages of their Cuban-origin cigars sold throughout the world.

19.     For many years, and at least since 1994, Plaintiffs' above-identified registered marks, the "Habanos" geographical indication, and the "Habanos s.a." trade name have appeared regularly in advertisements for Plaintiffs' 100% Cuban origin cigars in international and United States publications. Examples of such advertisements in United States publications are annexed hereto as Exhibit D.

20.     For many years prior to 2002, and continuing today, Plaintiffs have identified and promoted Cuban cigars as "Habanos" to cigar publications and journalists in the United States, and such publications and journalists regularly refer to Cuban cigars as "Habanos."

5

## DEFENDANTS' USE OF "HABANOS" AND "HABANOS PUROS"

21.     On May 21, 2002, Defendant Superior Cigars filed an application with the USPTO for the following mark in International Class 34 (Application Serial No. 76410081):



22.     In connection with its application, Defendant Superior Cigars disclaimed any exclusive right to use "HABANOS", "PUROS", and "ECUADOR" apart from the mark as shown.  Superior Cigars also submitted to the USPTO the following specimen as claimed to be used in commerce by Defendant Superior Cigars :

6

23. Defendant Superior Cigars currently distributes, sells, and advertises cigar products labeled "HABANOS" and/or "HABANOS puros" in the United States, including to consumers in New Jersey, through cigar distributors – including Defendant Gonzalez – and retailers located in this State, and through cigar retailers and/or distributors over the Internet.

24. Defendant Gonzalez currently distributes and sells Defendant Superior Cigars' "HABANOS" and/or "HABANOS puros" labeled cigar products to retailers located in the State of New Jersey, including retailers located in Clark, Eatontown, and Toms River.

25. Defendant Superior Cigars did not commence sales of cigar products labeled as "HABANOS" or "HABANOS puros" until 2002 at the earliest.

26. Defendant Superior Cigars advertises its "HABANOS" and/or its "HABANOS puros" labeled cigars in national cigar-oriented consumer and trade magazines.

27. In connection with its advertising and promotion of its cigar products labeled "HABANOS" and/or "HABANOS puros," Defendant Superior Cigars advertises and promotes its non-Cuban cigar products as "Cuba's Famous Brands."

28. Defendant Superior Cigars' "HABANOS" and "HABANOS puros" labeled goods appear in advertisements, on the internet, and in retail stores as shown in Exhibit E, annexed hereto.

29. Advertisements showing Plaintiffs' HABANOS and LA CASA DEL HABANO Marks, the "Habanos s.a." trade name, and the HABANOS geographical indication appear in the same United States cigar publications as advertisements for Defendants' "HABANOS" and/or "HABANOS puros" labeled cigar products.

30. The most dominant and significant feature of Defendant Superior Cigars' mark, both as used in commerce and in its USPTO application, is the word "HABANOS" in large

black block capital letters. When used, the word "puros" follows in small, light script.

31. On December 6, 2005, the USPTO published Defendant Superior Cigars' mark, as shown in para. 21, *supra*, for opposition. As published, the identification of Defendant Superior Cigars' goods stated, "cigars made from Ecuadorian and Cuban seed tobacco," as well as various cigar accessories.

32. On April 4, 2006, Plaintiff Habanos, S.A. filed a Notice of Opposition to Defendant's application, and filed an Amended Notice of Opposition on April 17, 2006 (Opposition No. 91170189). That Opposition proceeding is pending before the Trademark Trial and Appeal Board.

### THE MEANING OF "HABANOS" AND "HABANOS puros" AND THE REPUTATION OF CUBAN CIGARS

33. Defendants' use of the terms "HABANOS" and "HABANOS puros" on their non-Cuban origin goods constitutes, *inter alia,* trademark infringement, false advertising, false designation of geographic origin, and false designation of origin as to source, because Defendants' goods do not come from Havana or elsewhere in Cuba, are not made in whole or in part from tobacco grown in Cuba, and have no association, affiliation or connection with Plaintiffs.

34. The word "Habanos" denotes, and is recognized among cigar consumers throughout the world and in the United States to denote, cigars that are of 100% Cuban origin, that is, cigars made from 100% Cuban grown tobacco, and manufactured in Cuba, predominantly in or near the city and province of Havana, Cuba.

35. Dictionaries define the noun "Habano," the singular of the word "Habanos" (and the masculine form of "Habana," the Spanish word for the city of Havana), as a "Havana cigar."

Dictionaries likewise define the adjective "habano" as "from Havana, Cuba." The English word "Havana," in addition to denoting the capital of Cuba, is defined by dictionaries as a cigar made in Havana, or in Cuba, or of Cuban-grown tobacco.

36.     Leading cigar books, consumer guides, and cigar magazines sold in the United States, including cigar magazines in which Defendant Superior Cigars advertises its "HABANOS" and/or "HABANOS puros" labeled cigar products, use the terms "Habano(s)" and "Havana(s)" to denote a 100% Cuban-origin cigar. News and feature stories appearing in general circulation magazines, newspapers, and other publications directed to the general public in the United States likewise use the terms "Habano(s)" and "Havana(s)" to denote a 100% Cuban-origin cigar.

37.     The term "Habanos puros" translates as "pure Havana cigars," and among cigar consumers it denotes cigars made from 100% Cuban-grown tobacco. The term "puros" also translates from the Spanish as "cigars," and traditionally has had the meaning in the trade or industry, including among consumers throughout the world, and in the United States, of referring to cigars that are of 100% Cuban origin. The term "puros" is also used in the United States to describe a cigar whose ingredients (filler, binder, and wrapper) are all grown in the same country.

38.     Defendants' "HABANOS" and "HABANOS puros" labeled cigar products, which Defendant Superior Cigars claims, including in representations to the USPTO, are made from a mixture of tobaccos from different countries (not including Cuba), are neither Habanos, nor Habanos puros, nor *puros* as that term is used in the United States or elsewhere.

39.     United States and international publications directed to the cigar-consuming public and to the trade, including the United States cigar-consuming public and trade, refer to

9

"Habanos," that is, 100% Cuban-origin cigars, as a distinctive and different type of cigar from those cigars that are not of Cuban origin.

40.     Cuba is internationally recognized, including in the United States, as the most renowned country in the world for the growth of tobacco used for cigars, and for the production and manufacture of cigars, including cigars of the highest quality, and Havana is internationally recognized as the city and province most renowned for the manufacture of the highest quality cigars. No other region of the world is as renowned as Cuba for cigars.

41.     Genuine Habanos are desired by cigar smokers throughout the world, including in the United States, because of their Cuban origin.

42.     Consumers in the United States and elsewhere in the world associate cigars with Cuba. This association is one of the strongest goods/place associations of any consumer product with a particular geographic region in the world.

43.     Defendants' "HABANOS" and "HABANOS puros" labeled cigars denote, and are and will be understood by consumers to denote, a cigar made of tobacco from Cuba.

44.     Neither Havana nor Cuba is the place of origin or manufacture of any cigar of Defendants, nor are any such cigars made with any tobacco grown in Cuba or Havana, or from tobacco that comes from seeds that themselves come from Cuba or Havana. Defendants have no lawful means of obtaining tobacco or tobacco seeds grown in Cuba, or obtaining or selling cigars made from tobacco grown in Cuba, nor any means of obtaining or selling cigars that are made anywhere in the world if they are made or derived in whole or in part of any article which is the growth, produce or manufacture of Cuba.

45.     Defendants' "HABANOS" and "HABANOS puros" labeled goods are, and are likely to be, understood by consumers in the United States as indicating that cigars bearing those

labels are made from tobacco grown in Cuba and/or are manufactured in Cuba.

46.     The cigar-consuming public is likely to believe that the place identified by Defendants' "HABANOS" and "HABANOS puros" labeled goods – Havana, Cuba – indicates the geographical origin of Defendants' goods or the good's ingredients, when neither the goods nor the ingredients come from that place.

47.     Consumers' mistaken belief that Defendants' cigars come from Cuba, or are comprised in whole or in part of tobacco grown in Cuba, are likely to influence consumers' purchasing decisions.

### DEFENDANT SUPERIOR CIGARS' CLAIM THAT ITS CIGARS ARE MADE IN PART FROM "CUBAN SEED" TOBACCO

48.     Defendant Superior Cigars claims on its packaging and in its advertisements that its "HABANOS" and/or "HABANOS puros" labeled cigars are made, in whole or in part, from "Cuban seed tobacco." Defendant Superior Cigars represented to the USPTO that its cigars were "made from Ecuadorian and Cuban seed tobacco."

49.     Defendant Superior Cigars' representations that its goods, in whole or in part, are made from "Cuban seed tobacco" does not, and cannot, support Defendants' use of the terms "HABANOS" or "HABANOS puros" in connection with Defendants' cigar products made from non-Cuban tobacco.

50.     "Cuban seed tobacco," as used in the United States cigar industry, does not refer to tobacco grown from seeds that are themselves from Cuba.

51.     The United States trade embargo against Cuba prevents, as a matter of law, Defendant from manufacturing, acquiring, or transacting in products of Cuban origin, including tobacco seeds that come from Cuba. *See* 31 C.F.R. § 515.204(a) (emphasis added), which

11

provides:

> Except as specifically authorized by the Secretary of the Treasury ... no person subject to the jurisdiction of the United States may *purchase, transport, import, or otherwise deal in or engage in any transaction* with respect to *any merchandise outside the United States* if such merchandise:
>
> (1) *Is of Cuban origin*; or
> (2) Is or has been located in or transported from or through Cuba; or
> (3) Is made *or derived in whole or in part* of any article which is *the growth, produce* or manufacture of Cuba.

52.     Cigars made from tobacco grown from seeds that are, or may be, distant descendants of seeds or plants that came from Cuba many decades ago are different from cigars made from Cuban-origin tobacco, in terms of quality, characteristics, taste and aroma.

53.     There is no way for Defendant Superior Cigars, distributors or retailers of its cigars, including Defendant Gonzalez, or consumers in the United States to know if in fact tobacco claimed by Defendant Superior Cigars to be "Cuban seed tobacco" is in fact grown from seeds that are distant descendants of seeds or plants that came from Cuba many decades ago.

### INJURY TO PLAINTIFFS

54.     Plaintiffs believe that they are, or are likely to be, damaged by Defendants' use of the terms "HABANOS" and "HABANOS puros" for cigar products of non-Cuban origin.

55.     Defendants' use of the terms "HABANOS" and "HABANOS puros" for cigar products is likely to cause confusion with Plaintiff Habanos, S.A.'s registered HABANOS Mark, and with Plaintiff's "Habanos s.a." trade name.

56.     Defendants' use of the terms "HABANOS" and "HABANOS puros" for cigar products is likely to cause confusion or to cause mistake, or to deceive as to an affiliation, connection, or association between Defendant and Plaintiff Habanos, S.A., or as to the origin, sponsorship, or approval of Defendants' goods by Plaintiff Habanos, S.A., including that

consumers will initially believe that Defendants' cigars are products of Plaintiff Habanos, S.A. and/or Cuban cigars.

57.     Defendants' use of the terms "HABANOS" and "HABANOS puros" for cigar products will damage the reputation that Plaintiffs' Cuban cigars have in the United States.  Such use will also deceive consumers into believing that Cuban cigars, or cigars made from Cuban ingredients, or cigars affiliated with or approved or sponsored by Plaintiffs, are presently available for purchase in the United States.

58.     Defendants' use of the terms "HABANOS" and "HABANOS puros" for cigar products will damage the reputation that Plaintiffs' cigars have outside the United States, as a result of foreigners who are visiting the United States or who locate Defendants' cigar products on the Internet being deceived into believing that Defendants' non-Cuban "HABANOS" or "HABANOS puros" labeled cigars are in fact Cuban cigars, or made of Cuban tobacco, or are products of, or associated with, Plaintiffs.

59.     Plaintiffs' ability effectively to promote their cigar products and services in the U.S. market through lawful advertising and other lawful promotional activities is being damaged and will be damaged by Defendant Superior Cigars' use in advertising of the terms "HABANOS" and "HABANOS puros" for its non-Cuban cigars, including in the same publications in which Plaintiffs advertise and in which articles refer to Plaintiffs' 100% Cuban-origin cigars as "Habanos."

60.     Plaintiffs' success in marketing 100% Cuban-origin cigars to U.S. consumers, including Plaintiffs' ability to use their registered HABANOS and LA CASA DEL HABANO Marks, the "Habanos s.a." trade name, and "Habanos" as an indication of geographical origin, and Plaintiffs' ability to sell their cigars to U.S. consumers to the extent allowed under U.S. law,

will be damaged and diminished if Defendants are permitted to use the terms "HABANOS" and "HABANOS puros" in connection with non-Cuban cigars.

61. Plaintiffs' current ability to use their federally-registered HABANOS and LA CASA DEL HABANO Marks, the "Habanos s.a." trade name, and "Habanos" as an indication of geographical origin, in advertisements in United States publications in connection with creating a distinctive identity for, and consumer association with, their 100% Cuban origin cigars will be damaged if Defendants are permitted to use "HABANOS" and "HABANOS puros" in connection with non-Cuban cigars.

62. Defendants' use of the terms "HABANOS" and "HABANOS puros" for cigar products will result in Plaintiffs' loss of good will in their HABANOS and LA CASA DEL HABANO Marks and in the "Habanos s.a." trade name.

63. Plaintiffs' ability to use and to protect "Habanos" as an indication of geographical origin will be damaged if cigars not from Havana or Cuba are sold in the United States bearing the word "Habanos."

**FIRST CLAIM FOR RELIEF**
**15 U.S.C. § 1114**
**(Infringement of Federally Registered Trademark)**

64. Plaintiff Habanos, S.A. hereby incorporates by reference paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65. Defendants' above alleged acts have infringed and, unless enjoined, will continue to infringe, upon Plaintiff Habanos, S.A.'s federally-registered HABANOS Mark, in violation of 15 U.S.C. § 1114, in that Defendants' use of the terms "HABANOS" and "HABANOS puros" in connection with cigars is likely to cause confusion or mistake with, or to deceive in connection with, Plaintiff's registered HABANOS Mark.

14

66.   Plaintiff Habanos, S.A. will be irreparably harmed as a result of such violations, for which there is no adequate remedy at law.   Plaintiff Habanos S.A. is entitled to injunctive relief against Defendants' continued use of the infringing HABANOS and HABANOS puros marks in connection with cigars.

67.   Pursuant to 15 U.S.C. § 1117(a), Plaintiff Habanos, S.A. is entitled to Defendants' profits from the sale of cigars bearing the "HABANOS" and/or "HABANOS puros" labels, and Plaintiff Habanos, S.A.'s costs of this action, including its attorney's fees.

**SECOND CLAIM FOR RELIEF**
**15 U.S.C. § 1125(a)**
**(Trademark Infringement, Unfair Competition)**

68.   Plaintiff Habanos, S.A. hereby incorporates by reference paragraphs 1 through 63 of this Complaint as if fully set forth herein.

69.   Defendants are liable to Plaintiff Habanos, S.A. under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the terms "HABANOS" and "HABANOS puros" in connection with cigars is likely to cause confusion or mistake with, or to deceive in connection with, Plaintiff Habanos, S.A.'s rights in the mark HABANOS.

70.   Plaintiff Habanos, S.A. will be irreparably harmed as a result of Defendants' violations of 15 U.S.C. § 1125(a), for which there is no adequate remedy at law.  Habanos, S.A. is entitled to injunctive relief against Defendants' use of the terms "HABANOS" and "HABANOS puros" in connection with cigars.

71.   Pursuant to 15 U.S.C. § 1117(a), Habanos, S.A. is entitled to Defendants' profits from the sale of cigars bearing the "HABANOS" and/or "HABANOS puros" labels and Plaintiff's costs of this action, including its attorney's fees.

15

**THIRD CLAIM FOR RELIEF**
**15 U.S.C. § 1125(a)**
**(Unlawful Confusion as to Source)**

72.     Plaintiff Habanos, S.A. hereby incorporates by reference paragraphs 1 though 63 of this Complaint as if fully set forth herein.

73.     Defendants are liable to Plaintiff Habanos, S.A. under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because Defendants, in selling and marketing cigars bearing the marks "HABANOS" and "HABANOS puros," have made false designations of origin that are likely to confuse or to deceive customers as to the origin or source of Defendants' products, thereby impairing Plaintiff Habanos, S.A.'s goodwill.

74.     Plaintiff Habanos, S.A. will be irreparably harmed as a result of Defendants' violations of 15 U.S.C. § 1125(a), for which there is no adequate remedy at law.   Plaintiff Habanos, S.A. is entitled to injunctive relief against Defendants' use of the terms "HABANOS" and "HABANOS puros" in connection with cigars.

75.     Pursuant to 15 U.S.C. § 1117(a), Plaintiff Habanos, S.A. is entitled to Defendants' profits from the sale of cigars bearing the "HABANOS" and/or "HABANOS puros" labels and Plaintiff's costs of this action, including its attorney's fees.

**FOURTH CLAIM FOR RELIEF**
**15 U.S.C. § 1125(a)**
**(Trade Name Infringement)**

76.     Plaintiff Habanos, S.A. hereby incorporates by reference paragraphs 1 through 63 of this Complaint as if fully set forth herein.

77.     Defendants' "HABANOS" and "HABANOS puros" marks, when used on or in connection with Defendants' cigars, so resembles Plaintiff Habanos, S.A.'s trade name, "Habanos s.a.," previously used in the United States by Habanos, S.A., as to be likely to cause

16

confusion, or to cause mistake, or to deceive, within the meaning of, and in violation of, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

78.     Plaintiff Habanos, S.A. will be irreparably harmed as a result of Defendants' violations of 15 U.S.C. § 1125(a), for which there is no adequate remedy at law. Plaintiff Habanos, S.A. is entitled to injunctive relief against Defendants' continued use of the terms "HABANOS" and "HABANOS puros" in connection with cigars.

79.     Pursuant to 15 U.S.C. § 1117(a), Plaintiff Habanos, S.A. is entitled to Defendants' profits from the sale of cigars bearing the "HABANOS" and/or "HABANOS puros" labels, and Habanos, S.A.'s costs of this action, including its attorney's fees.

### FIFTH CLAIM FOR RELIEF
### 15 U.S.C. § 1125(a)
### (False Advertising, False Designation of Geographic Origin)

80.     Plaintiffs hereby incorporate by reference paragraphs 1 through 63 of this Complaint as if fully set forth herein.

81.     Defendants use the terms "HABANOS" and "HABANOS puros" in connection with non-Cuban cigars in commercial advertising or promotion, including in labels of such goods, which terms misrepresent the nature, characteristics, qualities, and geographic origin of Defendants' goods in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

82.     Defendants' use of the terms "HABANOS" and "HABANOS puros" to label their non-Cuban cigars constitutes literally false statements.

83.     Defendants' use of the terms "HABANOS" and "HABANOS puros" to label its non-Cuban cigars constitutes false or misleading statements, resulting in actual deception, and/or a tendency to deceive the relevant consumers, and such deception is likely to influence consumer

purchasing decisions.

84.     Plaintiffs will be irreparably harmed as a result of Defendants' violations of 15 U.S.C. § 1125(a)(1)(B), for which there is no adequate remedy at law.  Plaintiffs are entitled to injunctive relief against Defendants' continued use of the terms "HABANOS" and "HABANOS puros" in connection with non-Cuban cigars.

85.     Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to Defendants' profits from the sale of cigars bearing the "HABANOS" and/or "HABANOS puros" labels, and Plaintiffs' costs of this action, including their attorney's fees.

### SIXTH CLAIM FOR RELIEF
### Article 21, Inter-American Convention
### (Unfair Competition, False Designation of Geographic Origin)

86.     Plaintiffs hereby incorporate by reference paragraphs 1 through 63 of this Complaint as if fully set forth herein.

87.     At all relevant times, the United States and Cuba have been parties to the General Inter-American Convention ("IAC"), 46 Stat. 2907.

88.     Article 21 of the IAC prohibits acts of unfair competition as defined therein, including:

> (b)  The use of false descriptions of goods, by words … tending to deceive the public in the country where the acts occur, with respect to the nature, quality or utility of the goods;

> (c)  The use of false indications of geographical origin or source of goods, by words … which tend in that respect to deceive the public in the country in which these acts occur.

89.     "Habanos" is an indication of geographical origin or source of goods within the meaning of Article 21(c) of the IAC.

90.     The terms "HABANOS" and "HABANOS puros," as applied to Defendants' non-

Cuban goods, constitute false descriptions and false indications of geographical origin or source of Defendants' goods, which tend to deceive the public in the United States, within the meaning of Article 21(b), (c) of the IAC.

91.     Article 21 of the IAC is a self-executing treaty provision enforceable as such in the courts of the United States.  In addition, Article 21 of the IAC is incorporated by and enforceable pursuant to Section 44(b) and (h) of the Lanham Act, 15 U.S.C. § 1126(b), (h).

92.     Pursuant to Article 21 of the IAC and Section 44 of the Lanham Act, Plaintiffs are entitled to injunctive relief against Defendants' continued use of the terms "HABANOS" and "HABANOS puros" in connection with cigars.

**SEVENTH CLAIM FOR RELIEF**
**Articles 23-28, Inter-American Convention**
**(False Indication of Geographic Origin)**

93.     Plaintiffs hereby incorporate by reference paragraphs 1 through 63, and 87 of this Complaint as if fully set forth herein.

94.     "Habanos" is an indication of geographical origin or source within the meaning of Articles 23-28 of the IAC.

95.     "Habanos" does not correspond to the place in which Defendants' identified goods are, will be, or lawfully could be, fabricated, manufactured, produced or harvested.

96.     "Habanos" has not through constant, general and reputable use in commerce come to form the name or designation itself of Defendants' identified goods.

97.     To the consuming public, the quality and reputation of cigars depend on the place of production or origin.

98.     Articles 23-28 of the IAC prohibit Defendants' use and registration in the United States of the terms "HABANOS" and "HABANOS puros" in connection with non-Cuban origin

cigars.

99. Articles 23-28 of the IAC are self-executing treaty provisions enforceable as such in the courts of the United States. In addition, Articles 23-28 of the IAC are incorporated by and enforceable pursuant to Section 44(b) and (h) of the Lanham Act, 15 U.S.C. § 1126(b), (h).

100. Pursuant to Articles 23-28 of the IAC and Section 44 of the Lanham Act, Plaintiffs are entitled to injunctive relief against Defendants' continued use of the terms "HABANOS" and "HABANOS puros" in connection with non-Cuban cigars.

**EIGHTH CLAIM FOR RELIEF**
**Article 7, Inter-American Convention**
**(Trademark Infringement)**

101. Plaintiff Habanos, S.A. hereby incorporates by reference paragraphs 1 through 63, and 87 of this Complaint as if fully set forth herein.

102. Article 7 of the IAC entitles the owner of a mark protected in Cuba to an injunction against another's use of an interfering mark in the United States upon proof that the person who is using the interfering mark in the U.S. had knowledge, prior to that person's use of the interfering mark, of the existence and continuous use in Cuba of the mark upon goods of the same class.

103. Prior to Defendants' use of the interfering "HABANOS" and "HABANOS puros" marks in connection with cigars, Defendants were aware of the existence and continuous use in Cuba by Plaintiff Habanos, S.A. of the HABANOS Mark in connection with cigar products.

104. Article 7 of the IAC is a self-executing treaty provision enforceable as such in the courts of the United States. In addition, Article 7 of the IAC is incorporated by and enforceable pursuant to Section 44(b) and (h) of the Lanham Act, 15 U.S.C. § 1126(b), (h).

105. Pursuant to Article 7 of the IAC and Section 44 of the Lanham Act, Plaintiff

Habanos, S.A. is entitled to injunctive relief against Defendants' continued use of the "HABANOS" and "HABANOS puros" marks in connection with cigars.

<strong><u>NINTH CLAIM FOR RELIEF</u></strong><br/><strong>Articles 14-19, Inter-American Convention</strong><br/><strong>(Trade Name Infringement)</strong>

106.    Plaintiff Habanos, S.A. hereby incorporates by reference paragraphs 1 through 63, and 87 of this Complaint as if fully set forth herein.

107.    Articles 14-19 of the IAC entitle the owner of a trade name or commercial name used in Cuba to an injunction against use and a prohibition against registration in the United States of a trademark which may lead to error or confusion in the mind of the consumer with, or which is deceptively similar to, or the distinguishing elements of which consist of the whole or an essential part of, that trade name used in Cuba.

108.    Defendants' "HABANOS" and "HABANOS puros" marks have as their distinguishing element the word "Habanos," which constitutes an essential part of "Habanos s.a.," the commercial or trade name of Plaintiff Habanos, S.A.

109.    Defendants' use of the "HABANOS" and "HABANOS puros" marks in connection with cigars may lead to error or confusion in the minds of consumers, with respect to Plaintiff Habanos S.A.'s trade name, and are deceptively similar to Habanos, S.A.'s trade name.

110.    Articles 14-19 of the IAC are self-executing treaty provisions enforceable as such in the courts of the United States.  In addition, Articles 14-19 of the IAC are incorporated by and enforceable pursuant to Section 44(b) and (h) of the Lanham Act, 15 U.S.C. § 1126(b), (h).

111.    Pursuant to Articles 14-19 of the IAC and Section 44 of the Lanham Act, Plaintiff Habanos, S.A. is entitled to injunctive relief against Defendants' continued use of the terms "HABANOS" and "HABANOS puros" in connection with cigars.

## TENTH CLAIM FOR RELIEF
### N.J.S.A. 56:4-1 and Common Law
### (Unfair Competition, Misappropriation)

112.    Plaintiffs hereby incorporate by reference paragraphs 1 through 63 of this Complaint as if fully set forth herein.

113.    Defendants, by their actions, have appropriated for their own use the name, brand, trademark, reputation and goodwill of Plaintiffs in cigar products, in violation of N.J.S.A. 56:4-1, and the common law.

114.    Plaintiffs have devoted considerable effort and sums of money in establishing the goodwill in the United States of their HABANOS and LA CASA DEL HABANO Marks, the "Habanos s.a." trade name, and HABANOS as an indication of geographical origin in connection with cigars.

115.    Defendants have misappropriated Plaintiffs' fruits and labors by using the "HABANOS" and "HABANOS puros" marks in connection with cigars, entitling Plaintiffs to relief under N.J.S.A. 56:4-1, the common law of the State of New Jersey, and each State in which Defendants have engaged in the offending conduct.

116.    Defendants' complained of conduct has been willful and in bad faith.

117.    Plaintiffs have suffered and will continue to suffer irreparable harm as a result of Defendants' conduct, for which there is no adequate remedy at law.  Plaintiffs are entitled to injunctive relief, including pursuant to N.J.S.A. 56:4-2, against Defendants' continued use of its "HABANOS" and "HABANOS puros" marks in connection with cigars.

## ELEVENTH CLAIM FOR RELIEF
### 28 U.S.C. §§ 2201, 2202
### (Declaratory Judgment)

118.    Plaintiffs hereby incorporate by reference paragraphs 1 through 117 of this

Complaint as if fully set forth herein.

119.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiffs are entitled to a declaration that Defendants have no right to use the terms "HABANOS" or "HABANOS puros" in connection with cigars, that Defendants have infringed upon, and otherwise unlawfully violated and misappropriated, Plaintiff Habanos, S.A.'s rights and interests in its HABANOS Mark and its "Habanos s.a." trade name, and that Defendants' use of the terms "HABANOS" and "HABANOS puros" in connection with non-Cuban cigar products constitutes false advertising, including false designation of geographic origin.

**WHEREFORE,** Plaintiffs Habanos, S.A. and Cubatabaco respectfully pray for judgment as follows:

1.     For a declaratory judgment that Defendants have no right to use the terms "HABANOS" or "HABANOS puros" in connection with cigars, that they have infringed upon, and otherwise unlawfully violated and misappropriated, Plaintiff Habanos, S.A.'s rights and interests in its HABANOS Mark and its Habanos s.a. trade name, and that Defendants' use of the terms "HABANOS" and "HABANOS puros" in connection with non-Cuban cigar products constitutes false advertising, including false designation of geographic origin.

2.     For a permanent injunction restraining and enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them who receive actual notice of the Order:

    a.     From using the terms "HABANOS" or "HABANOS puros" in connection with importing, manufacturing, selling, offering for sale, distributing, advertising and/or promoting cigars and/or cigar accessories, including as a trademark or label, in print, on the Internet, or through any other media, or any other trademark, design, or trade dress which

23

colorably imitates or is confusingly similar to Plaintiff Habanos, S.A.'s registered HABANOS

Mark or Habanos s.a. trade name, or which uses the terms "Habanos," or similar variations,

including "Habano," "Habana(s)," or "Havana(s)."

    b. To recall from trade and all distribution channels any and all of their

products, packaging, advertising and promotional materials bearing the "HABANOS" or

"HABANOS puros" marks or labels;

    c. To destroy, within thirty (30) days of entry of any injunction herein, any

and all merchandise, packaging, package inserts, labels, signs, prints, wrappers, receptacles,

advertising, plates and other mechanical means of reproduction or other materials in their

possession, custody or control, now or hereafter, which bear the "HABANOS" or "HABANOS

puros" marks or labels, or any reproduction, copy or colorable imitation thereof;

    d. That within 30 days of the entry of the Order, Defendants shall file with

the Court and serve upon Plaintiffs' counsel sworn affidavits confirming their compliance with

the Order and describing the acts taken to comply with the Order;

   3. That Plaintiffs be awarded Defendants' profits from the sale of cigars bearing the

"HABANOS" and/or "HABANOS puros" marks or labels, and Plaintiffs' reasonable attorney's

fees and costs incurred in this action; and

   4. For such other and further relief as the Court may deem proper.

Dated: March 2, 2007

          Respectfully submitted,

      By: _____

          STEPHEN J. TAYLOR,
          TAYLOR, COLICCHIO & SILVERMAN, LLP
          502 Carnegie Center, Suite 103
          Princeton, New Jersey  08540
          609-987-0022

24

DAVID B. GOLDSTEIN
  (*(pro hac vice admission to be filed)*
RABINOWITZ, BOUDIN, STANDARD,
  KRINSKY & LIEBERMAN, P.C.
111 Broadway – 11th Floor
New York, New York 10006-1901
212-254-1111

*Attorneys for Plaintiff Corporacion Habanos, S.A.
and Empresa Cubana del Tabaco d.b.a.
Cubatabaco*

MAR-01-2007  10:26        US TREASURY                                    104804      P.02

# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                          **License No. CU-76577**

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:  **Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C.** (the "Licensee")
111 Broadway, 11th Floor
New York, NY 10006-1901
Attn: David B. Goldstein, Esq.

1. Pursuant to your application dated **November 9, 2006** (the "Application"), the following transactions are hereby licensed:

### * * * * * SEE REVERSE * * * * *

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority of cited above and the terms of this license.

3. The licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **February 29, 2008**, is not transferable, is subject to the provisions of Title 31, Parts 501 and 515 of the Code of Federal Regulations and any regulations and rulings issued pursuant thereto, and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control ("OFAC") or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

## OFFICE OF FOREIGN ASSETS CONTROL

By _Elizabeth Farrow 2/28/07_
Elizabeth W. Farrow
Assistant Director for Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

License No. CU-76577                                                    **Page 2 of 2**
**Licensees: Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C.**

**SECTION 1 - AUTHORIZATION:**  Subject to the condition in Section 2 of this license, all transactions are authorized to enable the Licensee to receive payment of professional fees for such services and reimbursement of incurred expenses related to such services from Cuban nationals in connection with the legal representation of the Cuban entity Corporation Habanos, S.A. ("Habanos") in legal proceedings in the United States with respect to Habanos's assertion of its rights and interests against Superior Cigars USA, Inc. ("Superior"), a Florida corporation, with respect to Superior's use and application for registration of the mark HABANOS PUROS in connection with cigar products.

**Authority:** 31 CFR § 515.512.

**SECTION 2 – CONDITION:** It is a condition of this license (a) that payments of fees or retainers pursuant to Section 1 above shall be made exclusively from fresh funds originating from a source not currently within the United States or within the possession or control of a United States person, including its overseas branches; (b) that such payments shall not be made from a blocked account or from other blocked property; and (c) that the funds shall be routed from Cuba to the United States through a third-country bank.

**SECTION 3 – RECORDKEEPING REQUIREMENT:** The Licensee shall keep a record of the transactions undertaken pursuant to this license. Such records shall be made available for examination upon demand for at least five years from the date of each transaction.

**SECTION 4 - WARNINGS:**  (a) Except as explicitly authorized in Section 1 above, nothing in this license authorizes any person subject to the jurisdiction of the United States to engage in any transaction or activity prohibited by the Cuban Assets Control Regulations, 31 CFR Part 515.

(b) Nothing in this license authorizes the transfer of funds through methods which involve debits or credits to blocked accounts subject to the jurisdiction of the United States.

(c) **Nothing in this license authorizes entry into a settlement agreement affecting property or interests in property or the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer, or otherwise alter or affect, property in which Cuba or a Cuban national has or has had an interest since the effective date of the Cuban Assets Control Regulations. A separate application to OFAC for a specific license is required for this purpose.**

**SECTION 5 – PRECEDENTIAL EFFECT:** The authorization contained in this license is limited to the facts and circumstances specific to the application.
*************************************************************************************



**DEPARTMENT OF THE TREASURY**
**WASHINGTON, D.C. 20220**

Cuban Assets Control Regulations                    License No. C-10120-m

**LICENSE AMENDMENT**

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a), 22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To: **Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C.**
(the "Licensee")
740 Broadway, 5th Floor
New York, NY  10003-9518
Attn:  Michael Krinsky, Esq.

Pursuant to your letter of June 4, 2002, the following is hereby authorized:

(a)  License No. C-10120 is hereby amended to delete the expiration date.  License No. C-10120 shall remain active, without the need to request extensions, unless you are notified in writing by this office, or through regulatory action, of its cancellation, or unless you, yourself, request its cancellation.

(b)  All other terms and conditions of License No. C-10120, as amended and extended, remain the same.

Issued by direction and on behalf of the Secretary of the Treasury:

**OFFICE OF FOREIGN ASSETS CONTROL**

By                                          7/4/02
David W. Mills, Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001, 50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]



## DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                    **License No. C-10120-L**

### LICENSE AMENDMENT

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a), 22 U.S.C. 6001 et seq.,
Executive Order 9193, Executive Order 9989, Proclamation 3447, and 31 CFR Parts 501 and 515)

To:  **Rabinowitz, Boudin, Standard, Krinsky
       & Lieberman, P.C.** (the "Licensee")
     740 Broadway, 5th Floor
     New York, NY  10003-9518
     Attn:  Michael Krinsky, Esq.


**SECTION 1 -  AUTHORIZATION:**


Pursuant to your letter of June 6, 2001, the following transactions are
hereby licensed:

(a)  License No. C-10120 is amended to extend the expiration date to
     **July 31, 2002.**

(b)  All other terms and conditions of License No. C-10120, as amended
     and extended, remain the same.


Issued by direction and on behalf of the Secretary of the Treasury:

**OFFICE OF FOREIGN ASSETS CONTROL**

By  _____  6/26/01  _____
          (Acting) Chief of Licensing


[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
 50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]



## DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                    License No. C-10120-k

### LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a), 22 U.S.C. 6001-11, Executive Order 9193, Executive Order 9989, Proclamation 3447, and 31 CFR Parts 501 and 515)

To: **Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C.**
    740 Broadway at Astor Place
    New York, NY  10003-9518
    Attn:  Michael Krinsky, Esq.

  1. This following transactions are hereby licensed:

\*    \*    \*    \*    \*    **SEE REVERSE**    \*    \*    \*    \*    \*

  2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

  3. The licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

  4. This license expires on **July 31, 2001,** updates and replaces License No. C-10120, as amended and extended through C-10120-j, is not transferable, is subject to the provisions of 31 C.F.R. Parts 501 and 515, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

  5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirement) applicable to the transaction(s) herein licensed, nor does it release the Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

  Issued by direction and on behalf of the Secretary of the Treasury:

                    OFFICE OF FOREIGN ASSETS CONTROL

            By  _____  9/8/99
                R. Richard Newcomb, Director

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001, 50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

**License No. C-10120-k**                                                                                           **- Page 2 of 2 -**
**Licensee: Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C.**

**SECTION I - AUTHORIZATION:**  (A)  All necessary transactions are authorized in connection with the solicitation and receipt of reasonable and customary fees by the law firm of **Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C.**, and persons employed by or under the control of the Licensee, in payment for legal services provided to the Republic of Cuba, its agencies and instrumentalities (altogether hereinafter, the "Government of Cuba,") as enumerated below:

(1)  Provision of legal advice and counseling to the Government of Cuba on the requirements of and compliance with the laws of any jurisdiction within the United States, provided that such advice and counseling is not provided to facilitate transactions in violation of 31 C.F.R. Part 515, Subpart B;

(2)  Representation of the Government of Cuba when named as a defendant in or otherwise made a party to domestic U.S. legal, arbitration, or administrative proceedings;

(3)  Initiation of domestic U.S. legal, arbitration, or administrative proceedings in defense of property interests subject to U.S. jurisdiction of the Government of Cuba;

(4)  Representation of the Government of Cuba before any federal agency with respect to the imposition, administration, or enforcement of U.S. sanctions against Cuba; and,

(5)  Provision of legal services in any other context in which prevailing U.S. law requires access to legal counsel at public expense.

(B)  It is a condition of this license that the fees received pursuant to paragraph (A) above are paid exclusively from fresh funds sent from outside the United States. Nothing in this license authorizes the receipt of payment from any blocked account or the unblocking of any blocked property.

**SECTION II - WARNING:**  (A)  This license does not authorize the transfer of any blocked property, the entry of any judgment or order that effects a transfer of blocked property, or the execution of any judgment against blocked property.
(B)  Nothing in this license authorizes the provision of services or the receipt of payment of fees or reimbursement of expenses in connection with services other than those delineated in Section I above.

**SECTION III - REPORTING REQUIREMENTS:**  (A)  In the event of litigation or similar proceedings, it is a condition of this license that the Licensee submit copies of all pleadings, motions, memoranda, exhibits, stipulations, correspondence, and proposed orders or judgments (including any proposed final judgment or default judgment) submitted to the court or decision-making body, and of all orders, decisions, opinions, or memoranda issued by the court or decision-making body, to: Chief Counsel's Office, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, N.W., Annex, Washington, D.C. 20220, within ten days of filing, submission or issuance.
(B)  In the event of litigation or similar proceedings, it is a further condition of this license that the Licensee report by immediate telephone call or facsimile transmission to the Chief Counsel's Office, Office of Foreign Assets Control (tel: 202/622-2410; fax: 202/622-1911), the scheduling of any hearing or status conference in legal proceedings whenever it appears that a court or decision-making body may issue an order or judgment or default judgment or is considering or may decide any pending motion dispositive of the merits of an action or of any claim raised in an action.

**SECTION IV - FILING REQUIREMENT:**  In the event of litigation or other legal proceedings, it is a further condition of this license that a copy of this license be submitted to the relevant court or any other decision-making body or forum.
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx